USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: JUN 1 2 2018

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

TCA TELEVISION CORP., HI NEIGHBOR, and : 
DIANA ABBOTT COLTON, :
         :
                 Plaintiffs, :
         :
            -against- :
         :
KEVIN MCCOLLUM, THE ENSEMBLE STUDIO :
THEATRE, INC., MANHATTAN CLASS :
COMPANY INC., ROBERT ASKINS, HAND TO :
GOD LLC, and DOES and ABC COMPANIES 1–10, :
         :
                 Defendants. :
         :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MEMORANDUM DECISION
AND ORDER

15 Civ. 4325 (GBD) (JCF)

GEORGE B. DANIELS, United States District Judge:

Plaintiffs TCA Television Corp., Hi Neighbor, and Diana Abbott Colton, the successors in interest to the estates of the comedy duo Abbott and Costello, brought this action against Defendants Kevin McCollum, The Ensemble Theatre, Inc., Manhattan Class Company Inc., Robert Askins, Hand to God LLC, and Does and ABC Companies 1–10, alleging Defendants infringed on Plaintiffs' copyright by using dialogue from an Abbott and Costello routine known as *Who's on First?* (the "Routine") in the Broadway play *Hand to God. TCA Television Corp. v. McCollum* ("*TCA I*"), 151 F. Supp. 3d 419, 424 (S.D.N.Y. 2015). In a Memorandum Decision and Order dated December 17, 2015 (the "2015 Decision"), this Court accepted Plaintiffs' claim of copyright ownership but granted Defendants' motion to dismiss Plaintiffs' complaint on the grounds that Defendants' use of the Routine was a non-infringing fair use. *Id.* at 437. On appeal, the Second Circuit found that Defendants' use of the Routine was not fair use, but affirmed dismissal of the complaint on the grounds that Plaintiffs failed to plausibly allege the existence of

a valid copyright interest.[1] *TCA II*, 839 F.3d at 172. Defendants now move for attorneys' fees and costs incurred in bringing the motion to dismiss and defending the appeal. (*See* ECF No. 100.)

Before this Court is Magistrate Judge James C. Francis's Report and Recommendation, ("Report," ECF No. 124), recommending that Defendants be awarded $50,123.04 in attorneys' fees and costs.[2] (*Id.* at 41.) In his Report, Magistrate Judge Francis informed the parties that failure to file timely objections to the Report would result in a waiver of those objections on appeal. (*Id.*) Plaintiffs filed timely written objections and requested oral argument on the motion. (*See* Pls. Objs. ("Objs."), ECF No. 125; Letter from Jonathan D. Reichman to this Court, dated July 21, 2017, ECF No. 126.) Defendants did not file written responses to Plaintiffs' objections, but did respond to the objections at oral argument.

Plaintiffs' objections are overruled. Magistrate Judge Francis's Report is ADOPTED. Defendants' motion for attorneys' fees and costs is GRANTED.

## I.    **LEGAL STANDARDS**

### A. Reports and Recommendations

A court "may accept, reject, or modify, in whole or in part, the findings or recommendations" set forth within a magistrate judge's report. 28 U.S.C. § 636(b)(1)(C). The court must review *de novo* the portions of a magistrate judge's report to which a party properly objects. *Id.* The court, however, need not conduct a *de novo* hearing on the matter. *See United*

---

[1] The Second Circuit noted that "the district court thought that '[t]he contract language, together with [the] subsequent registration of the copyrights . . . might admit a finding of 'implied assignment of the initial copyright from Abbott and Costello.'" *TCA Television Corp. v. McCollum* ("*TCA II*"), 839 F.3d 168, 187–88 (2d Cir. 2016). However, the Second Circuit held that Plaintiffs' efforts to rely on theories of assignment, work-for-hire and merger all fail as a matter of law, citing the "clearly express[ed] . . . parties' intent," the "clear contract language," the "plainly indicate[d] . . . parties' understanding, and 'language of the . . . Agreements [that], by itself, clearly belies [P]laintiffs' claim . . . ." *Id.* at 188–89.

[2] The relevant procedural and factual background is set forth in greater detail in the Report, and is incorporated herein.

2

*States v. Raddatz*, 447 U.S. 667, 675–76 (1980). Rather, it is sufficient that the court "arrive at its own, independent conclusion" regarding those portions of the Report to which objections were made. *Nelson v. Smith*, 618 F. Supp. 1186, 1189–90 (S.D.N.Y. 1985) (quoting *Hernandez v. Estelle*, 711 F.2d 619, 620 (5th Cir. 1983)).

Portions of a magistrate judge's report to which no or "merely perfunctory" objections are made are reviewed for clear error. *See Edwards v. Fischer*, 414 F. Supp. 2d 342, 346–47 (S.D.N.Y. 2006) (citation omitted). The clear error standard also applies when a party's "objections are improper—because they are 'conclusory,' 'general,' or 'simply rehash or reiterate the original briefs to the magistrate judge.'" *Stone v. Comm'r of Soc. Sec.*, No. 17 Civ. 569 (RJS) (KNF), 2018 WL 1581993, at *3 (S.D.N.Y. Mar. 27, 2018) (quoting *Rodriguez v. Colvin*, No. 12 Civ. 3931 (RJS) (RLE), 2014 WL 5038410, at *3 (S.D.N.Y. Sept. 29, 2014)). Here, because all of Plaintiffs' objections reiterate arguments made to Magistrate Judge Francis, this Court has reviewed the Report for clear error.

"In clear error review, a court should reverse a finding only if it is 'left with the definite and firm conviction that a mistake has been committed,' and not merely if it 'would have decided the case differently.'" *Hernandez v. City of New York*, No. 11 Civ. 6644 (KPF) (DF), 2015 WL 321830, at *2 (S.D.N.Y. Jan. 23, 2015) (quoting *Easley v. Cromartie*, 532 U.S. 234, 242 (2001)). In other words, the clear error standard is "highly deferential . . . and reversal is appropriate only if [the magistrate judge's] discretion is abused" or if the magistrate judge "fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Levy v. Young Adult Inst., Inc.*, No. 13 Civ. 2861 (JPO), 2016 WL 4402038, at *1 (S.D.N.Y. Aug. 18, 2016) (citations omitted); *see also BlackRock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, Nat'l Ass'n*, No. 14 Civ. 10067 (KPF) (SN), 2017 WL 3610511, at *5 (S.D.N.Y. Aug. 21, 2017) (noting that

3

clear error "is a highly deferential standard, and '[t]he party seeking to overturn a magistrate judge's decision thus carries a heavy burden'") (citation omitted).

### B. Copyright Act of 1976

Defendants seek attorneys' fees and costs pursuant to § 505 of the Copyright Act of 1976. Section 505 provides that, in a copyright infringement action, "the court in its discretion may allow the recovery of full costs by or against any party" and "may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. "[U]nder section 505 . . . an award of attorney's fees may be made for services rendered on appeal as well as at the trial level." *Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.3d 1366, 1383 (2d Cir. 1993) (internal quotation marks and citation omitted).

In *Fogerty v. Fantasy, Inc.*, the Supreme Court noted that "there is no precise rule or formula" for determining whether costs and fees should be awarded under § 505, but identified "several nonexclusive factors" that "may be used to guide courts' discretion," which include "[1] frivolousness, [2] motivation; [3] objective unreasonableness (both in the factual and legal components of the case), and . . . [4] considerations of compensation and deterrence." 510 U.S. 517, 534 & n.19 (1994). In *Kirtsaeng v. John Wiley & Sons, Inc.*, the Supreme Court further explained that "[a]lthough objective reasonableness carries significant weight, courts must view all the circumstances of a case on their own terms, in light of the Copyright Act's essential goals" of "encouraging and rewarding authors' creations while also enabling others to build on that work." 136 S. Ct. 1979, 1986, 1989 (2016).

### II.    DEFENDANTS ARE ENTITLED TO ATTORNEYS' FEES AND COSTS

The Report found that although Defendants did not establish that Plaintiffs had an improper motivation    for    bringing    this    action,    the    remaining    relevant    factors—the    objective

unreasonableness of Plaintiffs' claims, the frivolousness of Plaintiffs' arguments, and considerations of compensation and deterrence—favor an award of reasonable attorneys' fees and costs to Defendants. (Report at 21–35.)

### A. There is No Clear Error in the Report's Finding of Objective Unreasonableness

The Report found that it was "objectively unreasonable" for Plaintiffs "to argue that (1) "[Plaintiffs' predecessors in interest] assigned the copyright in the Routine" to Universal Pictures Company, Inc. ("UPC"), which produced two films that the Routine appeared in; (2) "the Routine was a work-for-hire" produced for UPC; and (3) "the Routine merged with the film *One Night in the Tropics*" in which the Routine appeared. (*Id.* at 23.) Plaintiffs object to this finding because "this Court held in its . . . 2015 [D]ecision that Plaintiffs' copyright ownership claim was . . . sufficiently valid to withstand a dismissal motion," and "the Second Circuit's disagreement with this Court . . . does not transform Plaintiffs' copyright ownership claim from valid to objectively unreasonable." (Objs. at 3.) Plaintiffs' objection to this finding simply reiterates the argument made to Magistrate Judge Francis. (*See* Pls. Mem. in Opp'n to Defs. Mot. for Attorneys' Fees ("Opp'n"), ECF No. 108, at 7–8).)

After considering this argument, the Magistrate Judge concluded, based on language from the Second Circuit's opinion in this action, that all three of Plaintiffs' theories as to their ownership of a valid copyright were objectively unreasonable. First, the Report noted "the Second Circuit found that the language of" two agreements that Plaintiffs argued created an assignment of the copyright "'plain[ly]' furnished a mere license to UPC to use the Routine" and found "[t]hat is the only reasonable reading of the agreements." (Report at 24 (quoting *TCA II*, 839 F.3d at 188–89).) The Report also noted that a separate "1984 Quitclaim does not help the Plaintiffs, because the Second Circuit found the language of the document undermined the notion that [UPC] owned the

5

copyright in the Routine." (Report at 25 (citing *TCA II*, 839 F.3d at 191).) Thus, the Magistrate Judge found Plaintiffs' theory that the two agreements at issue created an assignment rather than a license "ignore[d] the plain language of the agreements as well as controlling law, [and] was therefore objectively unreasonable." (Report at 27.)

Second, the Magistrate Judge found that Plaintiffs' theory that the Routine was a work for hire pursuant to the two agreements with UPC was undermined by Plaintiffs' admission "that the Routine pre-existed the . . . agreements by 'more than two years.'" (Report at 27 (quoting *TCA II*, 839 F.3d at 190, and citing Am. Compl., ECF No. 3, ¶ 32).) The Report also noted that the Second Circuit found Abbott and Costello "plainly did not *create* the Routine at UPC's 'instance and expense.'" (Report at 27 (quoting *TCA II*, 839 F.3d at 190).) The Report further found that Plaintiffs' argument in their appellate brief that one of the agreements "'confirmed' a preexisting agreement is unsupported by any allegation in the Amended Complaint." (Report at 28 (quoting Reply Brief for Plaintiffs-Appellants at 22, *TCA Television Corp. v. McCollum*, No. 16-0134, ECF No. 47).) Thus, the Magistrate Judge found Plaintiffs' work-for-hire theory objectively unreasonable. (Report at 28.)

Third, the Magistrate Judge found that it was "objectively unreasonable for the [P]laintiffs to argue that 'the Routine so merged with the UPC movies in which it was performed as to become a unitary whole.'" (Report at 29.) The Report noted that the Second Circuit found "the two cases upon which the [P]laintiffs principally relied—*Garcia v. Google*, 786 F.3d 733 (9th Cir. 2015) and *Richlin v. Metro-Goldwyn-Mayer Pictures*, 531 F.3d 962 (9th Cir. 2008)—did not support [Plaintiffs'] position. *Garcia* was not factually analogous, and *Richlin's* reasoning 'undermin[ed] rather than support[ed] the [P]laintiffs' merger theory.'" (Report at 30 (quoting *TCA II*, 839 F.3d at 192).) The Report also noted "the Second Circuit recognized . . . [P]laintiffs admitted that the

6

Routine pre-existed the films in which it appeared and was performed independently of those films countless times after their release." (Report at 31–32 (citing *TCA II*, 839 F.3d at 191–92).)

All three of the Report's findings as to the objective unreasonableness of Plaintiffs' arguments are supported by citations to the Second Circuit's opinion, and none misapplies that opinion or the governing law. Thus, there is no clear error in the Report's finding that Plaintiffs' theories of copyright ownership were objectively unreasonable.

## B. There is No Clear Error in the Report's Finding on Frivolousness

The Magistrate Judge found that three of Plaintiffs' subsidiary arguments before the Second Circuit were frivolous. (Report at 32–33.) Plaintiffs object to the Report's finding because "if the Second Circuit's opinion on these three subsidiary arguments was obvious, or Plaintiff's arguments were wholly without merit, then this Court would not have ruled in Plaintiff's favor in [the 2015 Decision]." (Objs. at 7.) Plaintiffs' argument reiterates a point Plaintiffs made to Magistrate Judge Francis, who rejected it in finding three of Plaintiffs' subsidiary arguments frivolous. (*See* Opp'n at 8–10.)

First, the Magistrate Judge determined that Plaintiffs' "persistent assertion that motion pictures are *per se* integrated works [wa]s frivolous" because "legal support that the [P]laintiffs garnered for that mistaken notion actually undermines it." (Report at 32–33.) This determination is supported by the Second Circuit's finding, cited above, that *Garcia* was "not analogous" to Plaintiffs' case, and *Richlin* "undermin[e]d rather than support[ed] the [P]laintiffs' merger theory." (Report at 30 (quoting *TCA II*, 839 F.3d at 192).) The Magistrate Judge's determination on this point was not clearly erroneous.

Second, the Magistrate Judge found that Plaintiffs' argument that "the work-for-hire provision in [one of the] [a]greement[s] was actually the confirmation of an understanding from

more than two years earlier" was "flawed" in a manner similar to their merger argument. (Report at 33.) The Report relies on its prior observation that Plaintiffs' work-for-hire theory was undermined by their admission, which was also noted by the Second Circuit, "that the Routine preexisted the . . . agreement[] by 'more than two years.'" (Report at 27 (quoting *TCA II*, 839 F.3d at 190).) The Report's finding as to the frivolousness of Plaintiffs' continued assertion of a work for hire argument through appeal was not clearly erroneous.

Third, the Magistrate Judge found that Plaintiffs' "argument that the 1984 Quitclaim related only to the common law copyright [was] sufficiently impaired both logically and legally" so as to be frivolous. (Report at 33.) The Report explained that Plaintiffs' argument was "logically and legally unsound" for two reasons. (*Id.* at 25–26.) First, the Report found the Plaintiffs' contention that the 1984 Quitclaim "refers to . . . the *common law* copyright' in the Routine rather than the federal copyrights" was "not at all apparent from the language of the document." (*Id.* at 25–26.) Second, the Report found that Plaintiffs' contention that, if UPC had not owned the copyright, the 1984 Quitclaim "'would have been utterly pointless' . . . misapprehends the purpose of a quitclaim, which does not warrant that the grantor has any ownership interest in the property at issue; rather, it merely 'transfers whatever present right or interest the grantor has.'" (*Id.* at 26 (quoting *Westlake v. Silva*, 121 P.2d 872, 873 (Cal. Dist. Ct. App. 1942).[3]) Neither of these findings was clearly erroneous. Nor was it clear error for the Magistrate Judge to conclude, based on these findings, that Plaintiffs' argument as to the 1984 Quitclaim was frivolous.

In sum, there is no clear error in the Report's finding that three of Plaintiffs' arguments— that motion pictures are *per se* integrated works, that a subsequent agreement "confirmed" the

---

[3] The Report assumed that the 1984 Quitclaim is governed by California law, because that is the place of its execution, but noted that "a quitclaim has the same attributes in New York and elsewhere." (Report at 26 n.11 (citing *Ebenstein v. Pritch*, 89 N.Y.S.2d 282, 284–85 (App. Div. 1st Dep't 1949) ("[A] quitclaim deed . . . does not set forth that the grantor is the owner of any interest in the property transferred.").)

parties' prior understanding that the Routine was created as a work for hire, and that the 1984 Quitclaim related only to the common law copyright, rather than the statutory copyright——were frivolous.

## C. There is No Clear Error in the Report's Findings on Deterrence and Compensation

The Magistrate Judge found that "[a]warding fees in this case would be faithful to the Copyright Act's purpose of enabling authors to build on the work of others . . . by deterring claimants from filing infringement actions when the arguments supporting their ownership of a copyright are weak to the point of unreasonableness." (Report at 34.) Plaintiffs object to the Report's "apparent[] reli[ance]" on *Assessment Technologies of WI, LLC v. WIREdata, Inc.*, 350 F.3d 640, 642 (7th Cir. 2004), because "unlike the plaintiff in *Assessment*, Plaintiffs did not engage in anything remotely similar to copyright misuse" and, thus, no fee award is necessary to "deter similar conduct in the future." (Objs. at 9.) But the Report did not find that a fee award would deter copyright misuse. Rather, it found that such an award would deter Plaintiffs from bringing copyright claims when their claims of copyright ownership are "weak to the point of unreasonableness." (Report at 34.)

Plaintiffs do not challenge the Report's finding that fee awards deter other potential plaintiffs from bringing objectively unreasonable claims, and other courts have made similar findings. *See, e.g., Mahan v. Roc Nation, LLC*, No. 14 Civ. 5075 (LGS), 2015 WL 4388885, at *2 (S.D.N.Y. July 17, 2015), *aff'd*, 634 F. App'x 329 (2d Cir. 2016) (finding that where plaintiff's claims "were objectively without merit," an award of attorneys' fees would "promote the interests of the Copyright Act because it w[ill] deter frivolous lawsuits"). Thus, given that there is no clear error in the Report's finding that Plaintiffs' claims were objectively unreasonable, there is also no clear error in its further finding that a fee award would promote deterrence.

9

The Magistrate Judge also found that a fee award "will serve to compensate [Defendants] for their defense of an action that should not have been brought in the first place because [P]laintiffs lacked standing." (Report at 34.) Plaintiffs object to this finding because they assert that it, like the finding on deterrence, "apparently relies" on *Assessment*, and the facts in *Assessment* are "inapposite to this case." (Objs. at 9.) Plaintiffs' objection is misplaced. The Report does not cite *Assessment* for its facts, but for the more general proposition that a fee award may be appropriate to "enable the party possessing a meritorious claim or defense to press it to a successful conclusion." (Report at 34–35 (quoting *Assessment Technologies of WI, LLC*, 350 F.3d at 642).) Plaintiffs do not object to this general proposition, and it is supported by additional case law. *See, e.g.*, *Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 359–60 (S.D.N.Y. 2006), *aff'd*, 249 F. App'x 845 (2d Cir. 2007). Therefore, the Report's finding that a fee award will serve to compensate Defendants for their defense of this action was not clearly erroneous.

Plaintiffs also object that Magistrate Judge Francis did not give due consideration to the fact that Plaintiffs "rely on income generated by the Routine for financial support." (Objs. at 10.) Though the Report did not directly address Plaintiffs' claims of financial hardship, Plaintiffs raised this argument to Magistrate Judge Francis. (*See* Opp'n at 12–13.) While "[c]ourts assessing attorney's fee applications may consider the relative financial strengths of the parties," if the "plaintiff has not offered any documentation, such as income tax filings or balance sheets, to support [plaintiff's] assertion" regarding his finances, a "claim of financial hardship is insufficiently supported." *Contractual Obligation Prods., LLC v. AMC Networks, Inc.*, 546 F. Supp. 2d 120, 132 (S.D.N.Y. 2008). Plaintiffs offered no such documentation here. Thus, the Magistrate Judge did not clearly err in declining to address Plaintiffs' claims of financial hardship.

Plaintiffs further object that their "success on the fair use side of the case is entitled to substantial weight." (Objs. at 10.) Plaintiffs raised this point to Magistrate Judge Francis, (*see* Opp'n at 8), and there is no clear error in the Report's finding that Plaintiffs "may have won the fair use battle, but they lost the war—and on a fundamental issue: the existence of a valid copyright in the material used by the defendants." (Report at 21.)

### D. There Is No Clear Error in the Report's Calculation of the Fee Award

Because Plaintiffs did not object to the calculation of the fee award in the Report, this Court reviews that calculation for clear error. *Edwards*, 414 F. Supp. 2d at 346–47. The Report correctly found that, considering the litigation "holistically and in light of the Copyright Act's goals," an award of attorneys' fees on appeal is appropriate. (Report at 38 (quoting *John Wiley & Sons, Inc. v. Kirtsaeng*, No. 08 Civ. 7834 (DLC), 2016 WL 7392210, at *2 (S.D.N.Y. Dec. 21, 2016)).)

As the Report notes, Defendants seek fees and costs for services rendered by Mark J. Lawless, Defendants' attorney of record, as well as by the law firm of Levine, Plotkin & Menin, LLP (the "Levine Firm"), counsel for the *Hand to God* production. (Report at 35–36 (citing Defs. Joint Mem. in Supp. of Mot. for Attorneys' Fees and Costs, ECF No. 102, at 19; Reply Decl. of Lawless, dated February 28, 2017 ("Lawless Decl."), ECF No. 114).) The Report correctly found that Lawless's hourly rate of $400 per hour was reasonable, and that, with the exception of 5.35 hours billed in connection with a potential claim in the United Kingdom, the hours Lawless billed were reasonable. (Report at 38, 40.) Thus, the Report correctly calculated that an award of $41,040 in attorneys' fees for Lawless's services is appropriate.[4] (Report at 41.) The Report also correctly found that fees sought by the Levine Firm should be reduced by 50% because the time

---

[4] Though Lawless generally billed for his services at a rate of $400 per hour, the fee he charged for his work on Defendants' motion for attorneys' fees and costs was capped at $4,000. (Report at 36 n.13 (citing Lawless Decl., Ex. 3 (invoice dated Jan. 25, 2016).)

records were unreasonably vague and so devoid of detail as to make analysis of individual entries impossible.[5] (*Id.* at 39–40.) Thus, the Report correctly calculated that an award of $8,800 in fees for the Levine Firm's services is appropriate. (*Id.* at 41.)

The Report further correctly found that the costs billed by Lawless and the Levine Firm for research, messenger services and mailing expenses, totaling $283.04, were reasonable. (*Id.* at 40.) The Report correctly excluded $6.70 in costs billed by the Levine Firm because it is unclear what the costs relate to. (*Id.*)

### III.   CONCLUSION

Plaintiffs' objections are overruled and Magistrate Judge Francis's Report is ADOPTED. Defendants' motion for attorneys' fees and costs, (ECF No. 100), is GRANTED.

Plaintiffs are ordered to pay Defendants attorneys' fees and costs in the amount of $50,123.04.

The Clerk of Court is directed to close the motion accordingly.

Dated: New York, New York
June 12, 2018

SO ORDERED.

GEORGE B. DANIELS
United States District Judge

---

[5] The time records submitted by the Levine Firm do not identify the attorneys who performed services for Defendants by name. (Report at 39.) The time records do reflect that services were billed at rates of $275, $325, and $800 per hour, but do not otherwise provide any information about the experience or reputations of the attorneys who provided these services. (*Id.* at 36, 39 (citing Lawless Decl., Ex. 6 (time records of the Levine Firm).) Thus, the time records submitted by the Levine Firm do not provide a sufficient basis to determine whether the rates it charged were reasonable.